**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**CLARA E. ELLIOTT**                                                                    **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO. 1:14-cv-20-LG-JMR**

**HUNTINGTON INGALLS INCORPORATED**                                      **DEFENDANT**

**MEMORANDUM OF HUNTINGTON INGALLS INCORPORATED**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Building ships is hard for a healthy employee. For an employee with severe congestive heart failure, it is impossible. Plaintiff Clara Elliott has suffered from congestive heart failure since 2001. Despite this, with the benefit of numerous accommodations, help from her co-workers, and frequent medical leaves, Elliott was able to hold a position as an electrician at the Pascagoula shipyard owned by Huntington Ingalls Incorporated (HII). By early 2012, however, Elliott's condition had deteriorated significantly. Following a lengthy medical leave that ended in April, her doctor placed her on medical restrictions that prevented her from performing the essential functions of her job. The limitations caused by Elliott's heart failure are extensive. She cannot endure heat or cold; she suffers from shortness of breath; she cannot stand or walk for more than short periods; she cannot pick up more than ten to twenty pounds; she must sleep with her head elevated; and she needs help with the most basic of life activities, including the simple task of getting up from a chair. She has had all of these difficulties since the beginning of 2012 and, by her own admission, has been unable to work since then. And because of her medical restrictions, HII did not permit her to return to work in April of that year.

Despite the undisputed facts, Elliott claims that HII violated the law by not permitting her to return to work. In her Complaint, Elliott asserts claims for disability discrimination and retaliation under the Americans with Disabilities Act (ADA) and retaliation under the Family

and Medical Leave Act (FMLA). HII is entitled to summary judgment on all of Elliott's claims because she was no longer able to perform the essential functions of her job, because there were legitimate, non-discriminatory reasons for HII's decision, and because no reasonable jury could find that the reasons were a pretext for discrimination or retaliation.

## FACTS

### I. ELLIOTT'S CONDITION

Elliott was diagnosed with congestive heart failure in 2001.[1] Her heart failure is caused by cardiomyopathy, a weak, enlarged heart.[2] Because of her condition, Elliott experiences shortness of breath, is unable stand and walk for significant periods, and can lift "maybe 10 to 20 pounds."[3] Elliott was put on a heart transplant list in 2005,[4] had a defibrillator implanted the same year,[5] and had a heart catheterization in 2010.[6] In January 2012, Elliott became sick and eventually had to have surgery yet again.[7] She has not worked at all since then.[8]

Since early 2012, Elliott's heart failure has been so severe that it affects her ability to do even simple tasks. Elliott is barely able to cook and clean because she tires easily.[9] She needs help getting out of a chair.[10] She sleeps upright because she cannot lie flat.[11] When asked

---

[1] Elliott Dep. 9 [Ex. 1].

[2] *Id.* at 51.

[3] *Id.*

[4] *Id.* at 77.

[5] *Id.* at 77-78.

[6] *Id.* at 79-80.

[7] *Id.* at 10, 54-55.

[8] *Id.* at 11, 106.

[9] *Id.* at 11.

[10] *Id.* at 12.

[11] *Id.* at 103; January 9, 2013 Medical Record [Ex. 2].

2

whether she could do yard work, she answered, "No. I can sit on a bucket and pull weeds up from around the flowers, evening time, in the late evening."[12] She testified that her husband helps her with "everything."[13] With these limitations, Elliott is not a person who can build ships in an industrial environment.

Indeed, Elliott has made it quite clear that she is unable to work at all. She is currently receiving social security disability benefits.[14] In the documentation she submitted to obtain those benefits, Elliott stated unequivocally that she was no longer able to work. Specifically, when asked "[w]hat were you able to do before your illnesses, injuries, or conditions that you can't do now?" Elliott responded: ***"Go to work on my job. Now I can't."***[15] In a separate submission, Elliott stated that she "[c]an't work because of all [her] complications with legs, back, heart and all the medications [she has] to take."[16] Elliott attested that she has been unable to work since January of 2012, when she became sick and took medical leave.[17] Notably, Elliott admitted in her deposition that these representations about her inability to work were true.[18]

In her application for disability benefits, Elliott also described the impact her condition has on her ability to perform daily tasks. She cannot take a shower because she gets dizzy.[19] She gets tired quickly when curling and combing her hair.[20] She cannot attend social events

---

[12] *Id.* at 14-15.

[13] *Id.* at 11.

[14] *Id.* at 16.

[15] May 25, 2013 Social Security Benefits Questionnaire at 2 (emphasis added) [Ex. 3].

[16] May 28, 2013 Social Security Benefits Questionnaire at 4 [Ex. 4].

[17] Application Summary for Disability Insurance Benefits [Ex. 5]; Elliott Dep. 106-07.

[18] Elliott Dep. 16.

[19] May 25, 2013 Social Security Benefits Questionnaire at 2 [Ex. 3].

[20] *Id.*

outdoors.[21]  She is fearful of bending because she may get dizzy and fall.[22]  She confirmed that her condition affects her ability to do all of the following:

- Lifting

- Squatting

- Bending

- Standing

- Reaching

- Walking

- Sitting

- Kneeling

- Stair Climbing

- Completing Tasks

- Using Hands.[23]

These limitations are particularly significant given the demands of Elliott's position as an electrician.  According to Elliott, her job required significant walking, standing, climbing, stooping, kneeling, crouching, crawling, handling/grabbing/grasping big objects, reaching, and handling small objects.[24]

Based on Elliott's own representations to the Social Security Administration, it is clear that she cannot perform the essential functions of her job.  The government agrees, and has ruled

---

[21] *Id.* at 6.

[22] *Id.* at 7.

[23] *Id.* at 6.

[24] May 28, 2013 Social Security Benefits Work History Report at 2 [Ex. 6].

JM MVB 1317841 v2
2905862-000062  08/01/2014

that Elliott has been disabled since January 23, 2012, the date she left work on medical leave.[25] The chronology of events is telling. *Elliott claims that HII violated the ADA by not permitting her to return to work three months after she was no longer able to work, as she represented to the government and as the government found.*

## II.     BACKGROUND

Elliott started her career at the shipyard in 2000 and became a First-Class Electrician in 2005. After being diagnosed with congestive heart failure, Elliott submitted an ever-changing series of medical restrictions to HII, many with temperature-based limitations. These limitations created significant problems because there is very little work for electricians at the shipyard in climate-controlled environments. Most electricians work outdoors and aboard vessels under construction.[26] Some work in shops that have fans and space heaters but not central air and heat.[27] The shipyard occasionally has some limited work for electricians in one room in one building with air and heat, but that work comes and goes and cannot be relied on to support an electrician's workload full-time.[28]

Elliott initially worked aboard ships, but when her condition worsened, HII accommodated her request not to do so.[29] She was also provided with the accommodation of a drive-in pass so she wouldn't have to walk from the parking lot to her work area.[30]

Elliott submitted her first formal medical restrictions in 2005. When she returned from work after a medical leave that year, Elliott (who was then Clara Hartfield) presented restrictions

---

[25] August 16, 2013 Social Security Benefits Request for Corrective Action [Ex. 7].

[26] Chambliss Declaration [Ex. 8].

[27] *Id.*

[28] *Id.*

[29] Elliott Dep. 52.

[30] *Id.* at 52-53.

from her physician stating she could not climb stairs or do heavy lifting and should avoid inhalants and noxious dust.[31]   Because HII had work that Elliott could perform with the restrictions, her limitations were accommodated, and she was able to return to work.[32]   Elliott submitted additional medical documentation the next month.  Her new restrictions noted that she was being evaluated for a heart transplant and specified that she required frequent rest in air-conditioning.[33]   Elliott testified that HII accommodated her needs by permitting her to take rest breaks in an air-conditioned office.[34]

In July of 2010, Elliott's doctor expanded her temperature restrictions, requesting that she work in a facility with air conditioning in the summer and heat in the winter.[35]   Because the shipyard had no work available for Elliott in such a facility, she was placed on medical leave.[36] Six weeks later, Elliott submitted new documentation from her doctor.  The new restrictions no longer required air-conditioning but instead stated that Elliott could return to work with a heat restriction.[37]   She thus returned to work in a non-air-conditioned environment and was given relatively sedentary duties and a fan.[38]

Although Elliott continued to work in that facility, she filed a Charge of Discrimination with the EEOC in February of 2011 complaining about it.[39]   Despite her physician's request for air-conditioning and the lack of work in an air-conditioned facility, Elliott alleged that she was

---

[31] July 14, 2005 Ingalls Work Restriction Program [Ex. 9].

[32] *Id.*

[33] August 3, 2005 Certification of Health Provider [Ex. 10].

[34] Elliott Dep. 82-83.

[35] July 1, 2010 Letter from Cardiology Associates [Ex. 11].

[36] McCray Declaration [Ex. 12]; McCray Declaration at Attachment A.

[37] Medical Records received by HII on August 30, 2010 [Ex. 13].

[38] McCray Declaration [Ex. 12]; McCray Declaration at Attachment B.

[39] February 7, 2011 Charge of Discrimination [Ex. 14].

"forced to take a non-paid medical leave of absence"[40] the previous summer. Elliott did not disclose the fact that her physician's request predicated the leave. As explained below, any claim based on the February 2011 charge is time-barred.

Elliott continued working until it got hot again. In June of 2011, her doctor again imposed more significant medical restrictions, specifically requiring air-conditioning in the summer and heat in the winter and stating that fans were not sufficient.[41] The shipyard's Return to Work Committee assessed the new restrictions, notified Elliott that there were no available electrician positions in air-conditioned facilities, and suggested that she apply for other positions.[42] Elliott did not do so, however, and thus was again placed on medical leave.[43] But HII did not take this action without first considering alternatives. In fact, HII even considered other shifts so Elliott would not be working during the hottest time of the day.[44] But there was simply no work available.[45]

Instead of taking the advice to apply for other positions, Elliott filed a second Charge of Discrimination, this time alleging both disability discrimination and retaliation for her earlier Charge.[46] She claimed in this Charge that she should have been assigned to one of two positions in a climate-controlled section of a facility.[47] But the employees holding those positions were

---

[40] Id.

[41] June 9, 2011 Letter from Cardiology Associates [Ex. 15].

[42] Edwards Declaration [Ex. 16]; Edwards Declaration at Attachment A.

[43] Id.

[44] McCray Declaration [Ex. 12]; McCray Declaration at Attachment C.

[45] Id.

[46] June 24, 2011 Charge of Discrimination [Ex. 17].

[47] Id.

required to perform significant duties in areas that were not climate-controlled.[48]   Assigning

Elliott to either of those positions thus would have violated her new medical restrictions.   As

explained below, any claim based on Elliott's second Charge, like her first one, is time-barred.

In September of 2011, Elliott obtained from her physician yet another set of restrictions.

The new ones did not require air-conditioning but instead stated that Elliott needed to avoid

extreme temperature variations.[49]   They also specified that she could work with fans in the

summer and heaters in the winter.[50]   A few days later, she submitted slightly different restrictions

that specified that she could not lift over 40 pounds.[51]   In light of these relaxed restrictions,

Elliott returned to work in a non-air-conditioned shop.[52]   She continued to be assigned easier

tasks than most electricians and was again provided a fan.[53]   Even with these accommodations,

Elliott was able to perform her duties only because other employees took time away from their

own work to help her.[54]

In January of 2012, Elliott's condition took a turn for the worse.   She became sick and

had to have surgery[55] and again went on medical leave, this time at the direction of her

physician.[56]   Elliott's leave was later extended to April 9, 2012, and thus lasted nearly three

months.[57]   Elliott testified that she was unable to work at all during this period.[58]

---

[48] Chambliss Declaration [Ex. 8].

[49] September 6, 2011 Medical Documentation [Ex. 18].

[50] *Id.*

[51] September 9, 2011 Medical Documentation [Ex. 19].

[52] McCray Declaration [Ex. 12]; McCray Declaration at Attachment D.

[53] *Id.*

[54] Elliott Dep. 45.

[55] *Id.* at 9-10.

[56] January 25, 2012 Certificate to Return to Work [Ex. 20].

[57] February 7, 2012 to March 27, 2012 Cumulative Medical Documentation [Ex. 21].

8

On April 10, 2012, Elliott attempted to return to work but failed to provide the necessary documentation.[59] HII requested her to supply updated information on her medical restrictions for consideration by the Return to Work Committee.[60] Elliott then obtained and submitted new (and permanent) restrictions from her physician that were much more extensive than any of her prior restrictions.[61] The restrictions included not only temperature limitations but also restrictions on lifting, bending, standing, walking, and climbing.[62] Specifically, the restrictions were as follows:

- No lifting over 25 pounds

- Avoid exposure to temperatures over 95 degrees or under 60 degrees

- Avoid working from unrestricted heights

- Avoid bending due to dizziness

- Should not work overhead for any significant period of time

- Cannot stand over one hour at a time

- Cannot walk over 500 feet without resting

- Limit stairs due to shortness of breath and dizziness.[63]

These restrictions affect virtually every physical movement required of an electrician in an industrial setting. They are so limiting that nobody with them could work as an electrician at the shipyard.[64] And because the shipyard had no work for Elliott that she could perform with

---

[58] Elliott Dep. 54-55.

[59] Edwards Declaration [Ex. 16].

[60] *Id.*

[61] April 25, 2012 Letter from Cardiology Associates [Ex. 22].

[62] *Id.*

[63] *Id.*

[64] Chambliss Declaration [Ex. 8]; Chambliss Declaration at Attachment A.

JM MVB 1317841 v2
2905862-000062 08/01/2014

these restrictions, she was placed on leave again.[65]   But again, HII explored all possibilities. Elliott's restrictions were submitted to the Return to Work Committee for evaluation.[66]   HII's Manager of Nursing, Michelle Edwards, communicated with Elliott's physician's office to obtain clarification and ensure accuracy.[67]   She also communicated the process to Elliott's union for review.[68]

When Elliott was told in April of 2012 that she could not come back to work with her restrictions, nobody mentioned the EEOC Charges she had filed in the past.[69]   Indeed, Elliott testified that nobody at the shipyard ever spoke to her about her EEOC Charges.[70]   Nor did anyone say or do anything that made her believe she was not permitted to return to work because she had filed EEOC Charges.[71]   Likewise, according to Elliott, nobody did or said anything indicating that taking FMLA leave was being held against her.[72]   Elliott was not permitted to return to work for one reason and one reason only:   With her new, extensive restrictions, she could not perform the essential functions of her job.

Elliott submitted additional paperwork from her physician after April of 2012, but her restrictions that were imposed then never changed.[73]   She first submitted documentation stating that she was no longer experiencing dizziness.[74]   But because the April 2012 permanent

---

[65] Edwards Declaration [Ex. 16].

[66] *Id.*

[67] *Id.* at Attachment B.

[68] *Id.*

[69] Elliott Dep. 55.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 17-18, 25-27.

[73] *Id.* at 63-64.

[74] May 17, 2012 Medical Documentation [Ex. 23].

restrictions were still in effect, HII still could not return Elliott to work.[75]  One month later, Elliott submitted a different medical record, but it likewise did not modify her April restrictions.[76]  Michelle Edwards again communicated with Elliott's physician and explained the return to work process.[77]  Edwards made clear that HII would need documentation showing changes to Elliott's restrictions before she could return to work.[78]  The physician did not change the restrictions, and Elliott thus remained on leave.  Finally, in August of 2012, Elliott submitted a document that stated without explanation that she could return to work.  Again, however, the new documentation did not mention or modify her existing restrictions[79] and so she could not return.  After August, Elliott never again inquired about the availability of work.[80]

Elliott admits that her restrictions never changed after April of 2012.[81]  As a result, she was never able to return to work.  Moreover, she stated unequivocally in her application for disability benefits that she has been unable to work since January of 2012.  She has plainly been unable to perform manual labor in an industrial setting since then.[82]

Elliott filed a third Charge of Discrimination with the EEOC on December 10, 2012.[83]  She again alleged disability discrimination and retaliation.  She specifically alleged that she was discriminated against because HII did not let her return to work following her medical leave that began in January of 2012.  After the EEOC issued a notice of right to sue, Elliot filed this

---

[75] Edwards Declaration [Ex. 16]; Edwards Declaration at Attachment C.

[76] June 20, 2012 Medical Record [Ex. 24].

[77] Edwards Declaration [Ex. 16]; Edwards Declaration at Attachment D.

[78] *Id.*

[79] August 22, 2012 Certificate to Return to Work [Ex. 25].

[80] Elliott Dep. 76-77.

[81] *Id.* at 63-64.

[82] Chambliss Declaration [Ex. 8].

[83] December 10, 2012 Charge of Discrimination [Ex. 26].

lawsuit.  In her Complaint, Elliott asserted a disability discrimination claim under the ADA and alleged that HII failed to make reasonable accommodations for her disability.[84]  She also asserted retaliation claims under the ADA and the FMLA based on allegations that HII refused to permit her to return to work because she had previously filed EEOC Charges and because she took FMLA leave.[85]

## ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the movant demonstrates that no genuine issue of material fact exists and identifies the part of the record that supports this assertion.[86]  To defeat the motion, the non-movant must then offer significant probative evidence from which a reasonable jury could find in her favor on every element of her claim.[87]  Neither conclusory allegations nor unsubstantiated assertions will satisfy this burden.[88]  Summary judgment is required if the non-movant cannot establish the existence of even one element that is essential to her case.[89]

---

[84] Complaint at 3 [Doc. # 1].

[85] [*Id.* at 4-5].

[86]  *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989).

[87]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

[88]  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

[89] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

JM MVB 1317841 v2
2905862-000062  08/01/2014

## II.    ELLIOTT'S ADA CLAIMS

### A.    STATUTE OF LIMITATIONS

The ADA incorporates by reference Title VII's administrative prerequisites for filing suit.[90]  Title VII – and thus the ADA – requires an employee to file a charge of discrimination with the EEOC within 180 days of the alleged act of discrimination.[91]  This time limit acts as a statute of limitations.[92]  A plaintiff thus cannot recover for discrete acts occurring more than 180 days before she filed her charge.[93]  The EEOC Charge that led to this litigation was filed on December 10, 2012.[94]  As a consequence, Elliott cannot recover for alleged discrimination or retaliation occurring before June 13, 2012.  Any claim based on the allegations in either of her first two Charges of Discrimination, which were filed in February and June of 2011, is thus time-barred.

Elliott does not complain about being placed on leave in January of 2012.  In fact, the leave was at the direction of her physician.[95]  Her complaint is that she was not permitted to return to work following the leave in April.  Her claim based on this action is also time-barred, however, because it occurred more than 180 days before she filed her Charge in December.[96]

---

[90] *See* 42 U.S.C. § 12117(a); *Gerald v. Univ. of Southern Miss.*, 2014 WL 172113, *6 (S.D. Miss. Jan. 15, 2014).

[91] *Hood v. Sears Roebuck & Co.,* 168 F.3d 231, 232 (5th Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)).

[92] *Id.* (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)).

[93] *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 114 (2002) ("only incidents that took place within the timely filing period are actionable"); *see also Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 127 S.Ct. 2162, 2169 (2007) (reaffirming *Morgan*).

[94] EEOC Charge [Ex. 26].

[95] January 25, 2012 Certificate to Return to Work [Ex. 20].

[96] *See Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005) (an alleged failure or refusal to accommodate a disability constitutes a discrete act that must be timely brought before the EEOC); *Gerald*, 2014 WL 172113, at *8, n.4 (same) (citing *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) ("[T]he denial of a disabled employee's request for accommodation starts the clock running on the day it occurs."); *Lee v. Dep't of Children & Families*, 939 F. Supp. 2d 160, 170 (D. Conn. 2013); *Patton v. AFG Indus., Inc.*, 92 F. Supp. 2d 1200, 1206 (D. Kan. 2000)).

JM MVB 1317841 v2
2905862-000062  08/01/2014

Moreover, not only is her claim based on the April 2012 decision time-barred, but Elliott likewise cannot recover for any subsequent attempt to return to work in the following months. Later requests to reconsider an employment decision do not toll the deadline or make the original decision a continuing violation.[97]  At a minimum, the April 2012 denial is a time-barred discrete act, and the later requests constitute separate discrete acts that must be evaluated separately.  It is undisputed, however, that neither Elliott's condition nor her restrictions changed in the months following the April decision.[98]  Her ADA claim is both untimely and without merit.

## B.    DISCRIMINATION AND FAILURE TO ACCOMMODATE

The ADA prohibits discrimination against a qualified individual on the basis of her disability.[99]   Under the ADA, the term "discriminate" includes not making reasonable accommodations for the physical limitations of a qualified individual.[100]   Courts in the Fifth Circuit sometimes analyze ADA discrimination and failure to accommodate claims under separate frameworks.[101]   Regardless of the framework, however, a plaintiff must establish that she is a qualified individual with a disability,[102] and an employee is a qualified individual only if she can perform the essential functions of her job, which are those functions that bear more than

---

[97] *See, e.g., Sumner v. Michelin N. America, Inc.*, 966 F. Supp. 15567, 1584, n.25 (M.D. Ala. 1997) (repeated requests to reinstate employee from long-term leave did not save the otherwise time-barred action).

[98] Elliott Dep. 10-11, 63-64.

[99] *Griffin v. UPS, Inc.*, 661 F.3d 216, 221-22 (5th Cir. 2011).

[100] *Hernandez v. Aldine Indep. School Dist.*, 192 F.3d 125, *2 (5th Cir. 1999).

[101] *Compare EEOC v. LHC Group, Inc.*, Case 1:11-cv-00355-LG-JMR, at 11-24 (S.D. Miss. Aug. 9, 2013) (separate frameworks) *and Griffin*, 661 F.3d at 221-22 (single framework).

[102] *Hernandez*, 192 F.3d at *2; *Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 479 (5th Cir. 2000)

JM MVB 1317841 v2
2905862-000062  08/01/2014

a marginal relationship to the job.[103]  It is the employee's burden to prove that she can perform those functions.[104]

It is clear that Elliott has a disability, but it is just as clear that she is not a qualified individual.  In April of 2012, her doctor imposed extensive restrictions on virtually every activity necessary to perform her job, including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, completing tasks, and using her hands.[105]  Elliott recognizes that all of these activities are required to do her job.[106]  Elliott's restrictions are permanent, and as a result of them she is unable to perform the essential functions of the job.[107]  Indeed, she admitted as much when she applied for disability benefits, stating that she "[c]an't work because of all [her] complications with legs, back, heart and all the medications [she has] to take."[108]

Although this representation is not conclusive, an ADA plaintiff who has made such an inconsistent statement must explain it.[109]  Elliott has not explained it.  To the contrary, she testified that her representation that she has been unable to work since January 2012 is true.[110]  Also underscoring the conclusion that Elliott has been unable to perform the essential functions of her job since early 2012 is the fact that Elliott needs help with tasks that are far less strenuous

---

[103] *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996).

[104] *Rizzo v. Children's World Learning Ctrs., Inc.*, 213 F.3d 209, 218 (5th Cir. 2000).

[105] May 25, 2013 Social Security Benefits Questionnaire at 6 [Ex. 3].

[106] May 28, 2013 Social Security Benefits Work History Report at 2 [Ex. 6].

[107] *See also Hernandez*, 192 F.3d at *3 (employer is not required to create a "light duty" job as an accommodation).

[108] May 28, 2013 Social Security Benefits Work History Report at 4 [Ex. 6].

[109] *See Reed*, 218 F.3d at 479 (citing *Cleveland v Policy Mgmt. Sys.*, 526 U.S 795, 798 (1999)) (plaintiff's statements in a social security disability application that appear to negate an essential element of her ADA case must be explained).

[110] Elliott Dep. 107.

JM MVB 1317841 v2
2905862-000062  08/01/2014

than her duties as an electrician. She can barely cook and clean;[111] she needs help getting up from a chair;[112] she sleeps upright because she cannot lie flat;[113] she can do no more in the yard than sit on a bucket and pull weeds in the late evening.[114]

Not only is Elliott not a qualified individual under the ADA, but she has no evidence to satisfy the requirement that she prove that disability discrimination played a role in HII's decision-making process or that it had a determinative influence on the outcome.[115] Elliott was put on medical leave in January of 2012 at the request of her physician.[116] She admits that she was unable to work from January until April.[117] And she was unable to return to work in April only because her doctor imposed much more significant medical restrictions than he had in the past.[118] Before HII decided that Elliott could not return to work, her case was submitted to HII's Return to Work Committee in accordance with HII's policy on reasonable accommodations.[119] The Committee evaluated Elliott's restrictions and determined that there was no work available that she could perform.[120] There is no evidence that the Committee failed to act in good faith. Elliott could not return to work because of her extensive restrictions, not because of any discriminatory animus. Because she is not a qualified individual and has no evidence that she

---

[111] *Id.* at 10.

[112] *Id.* at 12.

[113] *Id.* at 103; January 9, 2013 Medical Record [Ex. 2].

[114] *Id.* at 14-15.

[115] *Pinkerton v. Spellings,* 529 F.3d 513, 519 (5th Cir. 2008).

[116] January 25, 2012 Certificate to Return to Work [Ex. 20].

[117] Elliott Dep. 54-55.

[118] Edwards Declaration [Ex. 16].

[119] *Id.*; Reasonable Accommodation Policy [Ex. 27]. Under this policy, a committee may be convened to evaluate a medical restrictions submitted by an employee returning from leave.

[120] *Id.*

was discriminated against because of her disability, her ADA discrimination claim fails as a matter of law.

Elliott's accommodation claim also fails for multiple reasons.  The initial burden rests on an employee seeking an accommodation to suggest what the accommodation should be.[121]  Once an employee makes such a suggestion, "the employer and employee should engage in flexible interactive discussions to determine the appropriate accommodation."[122]  A violation of the ADA occurs only "when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee."[123]

Elliott's accommodation claim fails as a matter of law because she is not a qualified individual and because there is no evidence that HII was unwilling to engage in a good-faith, interactive process with her.  In fact, the evidence proves just the opposite.  First, HII accommodated Elliott's condition for years.  When her condition worsened, HII accommodated Elliott's request to stop working on ships.[124]  When walking became troublesome, HII gave Elliott a drive-in pass.[125]  In 2010, when extreme temperatures became an issue, HII gave her relatively sedentary duties and a fan.[126]  She was also permitted to take rest breaks in an air-conditioned office.[127]  Even then it was necessary for other employees to take time away from their own duties to help her.[128]  Moreover, whenever Elliott requested medical leave, HII

---

[121] *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996).

[122] *Griffin*, 661 F.3d at 224 (quoting *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)).

[123] *Id.* (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).

[124] Elliott Dep. 52.

[125] *Id.* at 52-53.

[126] McCray Declaration [Ex. 12]; McCray Declaration at Attachment B.

[127] Elliott Dep. 82-83.

[128] *Id.* at 45.

JM MVB 1317841 v2
2905862-000062  08/01/2014

accommodated her request.[129]  The evidence establishes that HII did everything possible to enable Elliott to work until, by her own admission, she could no longer work.

Second, HII communicated extensively with both Elliott and her health care providers in an effort to provide her with available accommodations.  When her restrictions required air-conditioning, HII suggested that she apply for other positions in air-conditioned facilities.[130]  Before placing her on leave in 2011, HII looked into whether a shift change would help.[131]  In April of 2012, when Elliott tried to return without proper documentation, HII requested that she provide updated medical restrictions so that HII could appropriately evaluate her condition and assess available accommodations.[132]  When she returned with her significant restrictions, HII did not simply turn her away, but again explored other possibilities.  Michelle Edwards, HII's Manager of Nursing, communicated with Elliott's physician's office to obtain clarification and to ensure accuracy.[133]  Edwards communicated the process to Elliott's union representative for his review and input.[134]  Edwards then submitted Elliott's restrictions to the Return to Work Committee for evaluation.[135]  These efforts proved futile only because Elliott was unable to perform the essential functions of a shipyard electrician.  HII is entitled to summary judgment on Elliott's accommodation claim.

---

[129] *Id.* at 25.

[130] Edwards Declaration [Ex. 16]; Edwards Declaration at Attachment A.

[131] McCray Declaration [Ex. 12]; McCray Declaration at Attachment C.

[132] Edwards Declaration [Ex. 16].

[133] *Id.* at Attachment B.

[134] *Id.*

[135] *Id.*

JM MVB 1317841 v2
2905862-000062  08/01/2014

## C.    RETALIATION

Elliott also alleges that she was retaliated against for filing her previous Charges with the EEOC.[136]  To establish a *prima facie* retaliation claim, a plaintiff must provide evidence that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal link exists between the two.[137]  If a plaintiff satisfies the *prima facie* requirements, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action.[138]  If the defendant does so, the plaintiff must then prove that the action would not have occurred but for the protected activity.[139]

Elliott's retaliation claim fails for three separate reasons.  First, Elliott has no evidence to establish causation.  Elliott admits that nobody mentioned her prior EEOC Charges when she was told in April of 2012 that she could not return to work with her new restrictions.[140]  In fact, nobody at the shipyard ever spoke to her about her EEOC Charges.[141]  Nor did anybody say or do anything in 2012 that made her believe she was not permitted to return to work because she had filed them.[142]  Second, the long time span between Elliott's prior Charge (June 2011) and the alleged retaliation (April 2012) is evidence that there is no causal link between the two.[143]  Third, HII has articulated a legitimate, non-discriminatory reason for not allowing her to return to work,

---

[136] Complaint at 4 [Dkt. #1].

[137] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (citing *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112 (5th Cir. 1998)).

[138] *Id.*

[139] *Id.*

[140] Elliott Dep. 55.

[141] *Id.*

[142] *Id.*

[143] *E.g., Raggs v. Mississippi Power & Light Co.,* 278 F.3d 463, 471 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092 (5th Cir. 1995).

JM MVB 1317841 v2
2905862-000062  08/01/2014

and there is no evidence that this reason was pretextual. The undisputed evidence establishes that Elliott could not return to work because her medical restrictions were too severe and because HII had no available work that she could perform with them. No reasonable jury could find that the medical restrictions were not the real reason for HII's decision or that retaliation for her prior EEOC Charges was. For all of these reasons, HII is entitled to judgment as a matter of law on Elliott's ADA retaliation claim.

## III.    ELLIOTT'S FMLA RETALIATION CLAIM

Elliott admits that she always got FMLA leave when she applied for it.[144] Nor does she allege that her FMLA leave was improperly administered. Consequently, the only potential FMLA claim she could assert, and the only one she does assert, is for retaliation. The elements of a retaliation claim under the FMLA are nearly identical to those for such a claim under the ADA. To establish a *prima facie* case of FMLA retaliation, a plaintiff must show that (1) she engaged in protected activity under the FMLA; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the employment action.[145]

Elliott's claim fails because there is no evidence of causation. She testified that nobody ever told her she had taken too much FMLA leave.[146] Nor did anyone mention FMLA leave when she was told she could not return to work.[147] Indeed, nobody said or did anything to

---

[144] Elliott Dep. 25.

[145] *Amsel v. Texas Water Dev't Bd.*, 464 F. App'x 395, 401 (5th Cir. 2012).

[146] Elliott Dep. 28.

[147] *Id.* at 27-28.

JM MVB 1317841 v2
2905862-000062  08/01/2014

indicate that she was not permitted to return to work because she had taken FMLA leave.[148]  In her deposition, Elliott could not even explain the basis for her FMLA retaliation claim.[149]

Elliott had taken FMLA leave on numerous occasions before 2012.  Yet she was always able to go back to work.  There was but one difference when she returned in 2012:  the severity of her restrictions.  The new restrictions imposed by Elliott's doctor, not her taking FMLA leave, is the reason she was not permitted to return to work.  There is no proof to suggest otherwise.  HII is entitled to summary judgment on Elliott's FMLA retaliation claim.

## CONCLUSION

Elliott deserves credit for trying to work.  But HII deserves credit for trying to help her work.   HII provided Elliott with numerous accommodations along the way.   With these accommodations, Elliott was able to remain employed until the restrictions her doctor imposed became too extensive – until, by her own admission, Elliott was no longer able to work.  HII did not violate the ADA or the FMLA and is entitled to summary judgment.

Dated:  August 1, 2014.

Respectfully submitted,

HUNTINGTON INGALLS INCORPORATED

By Its Attorneys

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

s/ Brooks Eason
Brooks Eason

---

[148] *Id.* at 27.

[149] *Id.* at 25-26.

OF COUNSEL:

Brooks Eason (MSB #5286)
Michael V. Bernier (MSB #103960)
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
Jackson, Mississippi  39211
Telephone:  601-351-2400
Facsimile:  601-351-2424

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing document with the

Clerk of the Court using the Court's CM/ECF system which sent notification of such filing to

counsel of record.

Dated:  August 1, 2014.

s/ Brooks Eason_____
Of Counsel

JM MVB 1317841 v2
2905862-000062  08/01/2014