IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CLARA E. ELLIOTT                                                                                    PLAINTIFF

VS.                                                                        CIVIL ACTION NO. 1:14-cv-20-LG-JCG

HUNTINGTON INGALLS INCORPORATED                                                    DEFENDANT

**REBUTTAL MEMORANDUM OF HUNTINGTON INGALLS INCORPORATED
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I.   AMERICANS WITH DISABILITIES ACT

HII is entitled to summary judgment on Elliott's claim under the ADA for two reasons. First, the claim is barred by the statute of limitations. Elliott concedes that her claim based on HII's decision not to permit her to return to work in April of 2012 is time-barred, but she asserts that she provided more information from her physician in June and August of that year and that HII refused to allow her to return to work either time, and she argues that these are separate actions that are not time-barred. *Id.* at 1, 3.

A plaintiff, however, cannot avoid the bar of the statute by repeatedly requesting reinstatement. *E.g., Sumner v. Michelin N. America, Inc.,* 966 F.Supp. 1567, 1584 (N.D. Ala. 1990) (citing *Delaware State College v. Ricks,* 449 U.S. 250, 251 (1980)). If this were the case, a plaintiff could resurrect an untimely claim simply by asking the employer to reconsider its decision. Indeed, "[t]o permit a person to reset the statutory requirements for the timely filing of a complaint merely by writing a new letter to his former employer would clearly vitiate the intent behind" the statute of limitations. *Zdziech v. Daimler Chrysler Corp.,* 114 Fed. Appx. 469, 472 (3d Cir. 2004). As a result, "a plaintiff cannot 're-start the statute of limitations by re-requesting the denied accommodation.'" *Long v. Howard Univ.,* 512 F.Supp. 1, 17-18 (D.D.C. 2007) (quoting *Stewart v District of Columbia,* 2006 WL 626921, at *6 (D.D.C. Mar. 12, 2006)).

"'[A]llowing [the plaintiff] to restart the statute of limitations by sending a letter requesting reasonable accommodations after she has been unequivocally fired would destroy the statute of limitations.'" *Hall v. The Scotts Co.,* 211 Fed. Appx. 361, 363 (6th Cir. 2006) (quoting *Conner v. Reckitt & Colman, Inc.,* 84 F.3d 1100, 1102 (8th Cir. 1996)). Based on this principle, it is clear that Elliott's ADA claim is time-barred.

Nor can Elliott overcome this conclusion by asserting that she provided more information from her physician to HII in June and August. As Elliott testified, the restrictions imposed by her doctor in April were never changed. Elliott Dep. 64 [Ex. 1]. Elliott likewise does not assert that she requested different accommodations for her conditions in June or August. Elliott admits that her claim based on HII's decision in April is time-barred, and the claim cannot be revived by her request for reconsideration of that decision in June and August.

Second, HII is entitled to judgment as a matter of law because there is insufficient evidence to establish that Elliott could perform the essential functions of her job or that HII declined to permit her to return to work because of disability discrimination. In her successful effort to obtain Social Security disability benefits, Elliott stated unequivocally that she has been unable to work since January of 2012. She made these statements without qualification or explanation. She testified in her deposition that they were true. She never claimed that her testimony was based on the definition of "disabled" under the Social Security laws rather than the ADA, and she never indicated that she meant only that she could not work without accommodation when she represented to the Social Security Administration and later testified that she could not work.

Although statements in a plaintiff's application for disability benefits that appear to negate an essential element of her ADA case do not automatically foreclose the claim, the

JM PBE 1330117 v1
2905862-000062  09/04/2014

plaintiff must explain the contradictory statements. *Reed v. Petroleum Helicopters, Inc.,* 218 F.3d 477, 479 (5th Cir. 2000) (citing *Cleveland v. Policy Mgmt. Sys.,* 526 U.S. 795, 798 (1999)). Elliott attempts to satisfy this requirement by asserting in an affidavit that "I answered that I could not work because I understood the Defendant to be asking me if I could work based on the definition of disabled under the social security administration, and not whether I could work with reasonable accommodations under the Americans with Disabilities Act." Elliott Affidavit at ¶ 10. Leaving aside the question of how she could have known the differences in the legal definition of "disabled" in the two statutes, Elliott was not asked in her deposition if she was disabled. To the contrary, she was asked if she could work, and she testified without qualification that she could not.

> Q. When you applied for disability, did you tell the government that you were unable to work?
> A. Yes.
>
> Q. Was that true?
> A. Yes.

Elliott Dep. at 16 [Ex. 1]. Elliott further represented to the Social Security Administration that she has been unable to work since January 23, 2012, and she testified that this representation was true as well. *Id.* at 107. It is well established that a plaintiff cannot create a genuine issue of fact with an affidavit that contradicts her prior deposition testimony. *E.g., Doe v. Dallas Ind. School Dist.,* 220 F.3d 380, 386 (5th Cir. 2000). Elliott cannot explain away the unequivocal statements in her application for benefits and her unequivocal testimony with the contradictory statement in her affidavit.

Moreover, even if Elliott's unqualified statements about her inability to work could somehow be disregarded, her description of her condition as detailed in HII's initial brief demonstrates beyond any doubt that she cannot perform the essential functions of a shipyard

3

electrician. Elliott has had congestive heart failure for more than a decade. By her own admission, she is barely able to cook and clean, needs help getting out of a chair, sleeps upright because she cannot lie flat, cannot take a shower because she gets dizzy, gets tired simply from curling and combing her hair, and needs help from her husband with "everything." Her condition affects her ability to lift, bend, stand, walk, sit, complete tasks, and use her hands as well as other basic activities. She is, by any definition, an invalid.

Despite all these problems with the simplest of tasks, Elliott claims she could have returned to work building hanger bars because there were large overhead fans in the shop and she could have had the personal use of a box fan. Elliott Affidavit at ¶¶ 11-14. According to Elliott, she knows she could have performed the job with these accommodations because she did so in 2003 or 2004. *Id.* at ¶ 14. This contention, however, depends on the premise that Elliott's condition did not change between 2004 and 2012. The premise is not valid. In 2004, Elliott was in her mid-40s. She had only recently been diagnosed with congestive heart failure and as yet had no formal work restrictions. In the years that followed, her condition deteriorated, and her doctor imposed increasing restrictions on what she could and could not do. In 2005, Elliott was evaluated for a heart transplant. HII's Ex. 10. She had a defibrillator implanted the same year, and her doctor imposed work restrictions for the first time. Elliott Dep. at 77-78; HII's Ex. 10. Five years later, Elliott had a heart catheterization. Elliott Dep. at 79-80. Two years after that, she became sick and had to have surgery for a third time. *Id.* at 10, 54-55. When she returned to the shipyard following the third surgery, Elliott presented a set of work restrictions from her doctor that was far more extensive than her restrictions had been in the past. Specifically, the new restrictions included:

4

- No lifting over 25 pounds

- Avoid exposure to temperatures over 95 degrees or under 60 degrees

- Avoid working from unrestricted heights

- Avoid bending due to dizziness

- Should not work overhead for any significant period of time

- Cannot stand over one hour at a time

- Cannot walk over 500 feet without resting

- Limit stairs due to shortness of breath and dizziness.

HII's Ex. 22.

Elliott makes no attempt to explain how she could perform the essential functions of a shipyard electrician with all of these restrictions. Just one of the restrictions – avoiding exposure to temperatures over 95 degrees or under 60 degrees – would keep her from working in the shop where she was assigned, which had neither central air nor heat. Fans no doubt would help, but they would not guarantee that it would always be below 95 in the summer, and they would be of no use when it is below 60 in the winter. The superintendent of the Electrical Department has attested that nobody with all of the restrictions Elliott's doctor imposed could work as an electrician at the shipyard. HII's Ex. 8. No reasonable jury could disagree. HII is entitled to judgment as a matter of law on Elliott's ADA claim.

## II. FAMILY MEDICAL LEAVE ACT

Elliott does not oppose judgment as a matter of law on her ADA retaliation claim but argues that HII's motion on her FMLA retaliation claim should be denied. As evidence of a causal link between her protected activity and the adverse employment action, Elliott points out that she took medical leave in January 2012 and HII declined to allow her to return to work in

April. Brief at 4. She argues that the Supreme Court and the Fifth Circuit have consistently found that a four-month gap between the protected activity and the adverse action is sufficient to show causation. *Id.*

In fact, the Supreme Court decision on which Elliott relies cites with approval decisions in which courts held that a three- or four-month gap between the protected activity and the adverse action was insufficient to establish causation. *Clarke County School Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-1175 (7th Cir. 1992)). Moreover, none of the Fifth Circuit decisions on which Elliott relies involved the FMLA, and none of them suggest that declining to permit an employee to return to work based on extensive new medical restrictions after a three-month FMLA leave is sufficient to raise an inference of retaliation.

Additionally, even when temporal proximity has been held sufficient to show causation under other employment statutes, this is only for the purposes of establishing a prima facie case. And as one of the decisions Elliott cites confirms, establishing a prima facie case is not sufficient to defeat summary judgment. If the employer responds to the prima facie showing by articulating a legitimate, nondiscriminatory reason for its action, the plaintiff must then offer sufficient proof that those reasons were a pretext for unlawful retaliation. *Richard v. Cingular Wireless LLC,* 233 Fed. Appx. 334, 338-39 (5th Cir. 2007).

Elliott asserts that she can show pretext because she could have performed the functions of her position with reasonable accommodation. Brief at 4. But this claim, like her ADA claim, depends on the premise that Elliott could have performed the job of building hanger bars in 2012 when she had extensive medical restrictions because she was able to perform it eight years earlier when she had no medical restrictions. There is no evidence from which a reasonable jury

6

could find that Elliott could have performed her job with the extensive new restrictions imposed by her doctor in April 2012. Nor is there any proof that retaliation against Elliott for taking FMLA leave, rather than the extensive restrictions, was the real reason she was not permitted to return to work. Elliott admitted that nobody mentioned her FMLA leave when she was told she could not return to work in April. Elliott Dep. 27-28. The one reason she could not return to work then, and the one fact that distinguishes what happened then from all the times in the past when she was permitted to return to work after taking FMLA leave, was the severity of her restrictions. HII is entitled to judgment as a matter of law on Elliott's FMLA retaliation claim.

## III. CONCLUSION

Tacitly conceding that HII is entitled to summary judgment, Elliott closes her brief by arguing that the motion should be denied even if the Court determines that the standards for granting it have been met. Brief at 5. But Elliott does not explain why HII should have to expend time and money and the Court should have to devote its scarce resources to trying a case in which there is no genuine issue of material fact. This is not a close case. Granting this motion and ending it now would serve the overriding purpose of the Federal Rules – "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Dated: September 4, 2014.

Respectfully submitted,

HUNTINGTON INGALLS INCORPORATED

By Its Attorneys

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

s/ Brooks Eason
Brooks Eason

7

OF COUNSEL:

Brooks Eason (MSB #5286)
Michael V. Bernier (MSB #103960)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
Jackson, Mississippi  39211
Telephone:  601-351-2400
Facsimile:  601-351-2424

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system which sent notification of such filing to counsel of record.

Dated:  September 4, 2014.

s/ Brooks Eason__
Of Counsel
