IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CLARA E. ELLIOTT**                                              **PLAINTIFF**

**v.**                                              **CAUSE NO. 1:14CV20-LG-JCG**

**HUNTINGTON INGALLS, INC.**                                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S <u>MOTION FOR SUMMARY JUDGMENT</u>

**BEFORE THE COURT** is the Motion for Summary Judgment [24] filed by

the defendant, Huntington Ingalls, Inc., in this lawsuit filed pursuant to the

Americans with Disabilities Act and the Family and Medical Leave Act.  The

plaintiff, Clara E. Elliott, has filed a response in opposition to the Motion, and

Ingalls has filed a reply.  After reviewing the submissions of the parties, the record

in this matter, and the applicable law, the Court finds that the Motion for Summary

Judgment should be granted as to Elliott's ADA claims and denied as to Elliott's

FMLA retaliation claim.

### FACTS

Clara Elliott began working at the Ingalls shipyard in 2000. (Def.'s Mem. at

5, ECF No. 25).  She was employed as an electrician.  In 2001 Elliot was diagnosed

with congestive heart failure.  (Def.'s Mot., Ex. 1 at 9, ECF No. 24-1).  She has

testified that the condition causes her to suffer from shortness of breath, the

inability to stand or walk for long periods of time, and the inability to lift objects

weighing more than ten to twenty pounds.  (*Id.*)  Her husband helps her with all of

her household chores, because she tires very easily.  (*Id.* at 11).  In 2003, Elliott reached the point where she could no longer work aboard ships, because she could not go up and down stairs.  (*Id.* at 52).  As a result, Ingalls transferred her to another area of the shipyard.  (*Id.*)  Ingalls also gave her a drive-in pass so that she would not be required to walk long distances.  (*Id.* at 52-53).  In 2005, Elliott submitted medical restrictions that provided she should not climb any stairs, lift heavy objects, or be exposed to inhalants or noxious dust.  (Def.'s Mot., Ex. 9, ECF No. 24-9).  Ingalls accommodated these restrictions.  (*Id.*)  Soon afterwards, Elliott was evaluated for a heart transplant.  (Def.'s Mot., Ex. 1 at 77, ECF No. 24-1; Def.'s Mot., Ex. 10, ECF No. 24-10).  Her physician notified Ingalls that Elliott could not stand for prolonged periods of time, and she could not lift objects that weigh over five to ten pounds.  Prolonged exposure to extreme temperatures were prohibited, and frequent rest periods in an air- conditioned environment were prescribed. (Def.'s Mot., Ex. 10 at 2, ECF No. 24-10).  Elliott testified that she was removed from the heart transplant list after she received a defibrillator implant.  (Def.'s Mot., Ex. 1 at 77, ECF No. 24-1).

In 2010, Elliott underwent a heart catheterization.  (*Id.* at 79-80).  In July of that year, Elliott's physician notified Ingalls that she could not tolerate extreme temperature variations and requested that she be permitted to work in an air-conditioned environment in the summer and a heated environment in the winter. (Def.'s Mot., Ex. 11, ECF No. 24-11).  Ingalls determined that Elliott could not work

with these restrictions, because the shipyard had no positions available for electricians in an air-conditioned environment.  (Def.'s Mot., Ex. 8, ECF No. 24-8). She was placed on non-industrial medical leave.  (*Id.*)  Several weeks later, Elliott's physician notified Ingalls that air conditioning was no longer required, so Elliott was permitted to return to work and to use a fan.  (*Id.*)  On February 7, 2011, Elliott submitted a Charge of Discrimination to the EEOC, claiming that Ingalls transferred her to a position that violated her medical restrictions.  (Def.'s Mot., Ex. 14, ECF No. 24-14).

In June 2011, the air conditioning restriction was again imposed, and Elliott was placed on leave.  (Def.'s Mot., Ex. 8, ECF No. 24-8; Def.'s Mot., Ex. 15, ECF No. 24-15).  Elliott's physician specifically stated that fans were insufficient.  (*Id.*)  On June 24, 2011, Elliott filed another Charge of Discrimination with the EEOC, in which she alleged (1) that she was placed on leave in retaliation for her prior EEOC charge and (2) that Ingalls discriminated against her by failing to accommodate her.  (Def.'s Mot., Ex. 17, ECF No. 24-17).  In September 2011, Elliott was permitted to return to work with a fan after her physicians provided updated restrictions that did not require air conditioning.  (Def.'s Mot., Ex. 11, ECF No. 24-11).

In January 2012, Elliott's condition worsened, and she had to undergo surgery to have her pacemaker repaired.  (Def.'s Mot., Ex. 1 at 10, ECF No. 24-1). Her physician placed her on medical leave until April 9, 2012.  (Def.'s Mot., Ex. 20-22, ECF Nos. 24-20, 24-21, 24-22).  The following restrictions were imposed: no lifting over twenty-five pounds; avoid exposure to temperatures over ninety-five

degrees and under sixty degrees; avoid working from unrestricted heights; avoid

bending due to dizziness; do not work overhead for any significant period of time; do

not stand for over one hour at a time; do not walk over 500 feet without resting; and

limit stairs due to shortness of breath and dizziness.  (Def.'s Mot., Ex. 22, ECF No.

24-22).  The physician stated that these restrictions are lifelong.  (*Id.*)  Ingalls

determined that she could not perform electrical work with these restrictions.

(Def.'s Mot., Ex. 16, ECF No. 24-16).

On May 17, 2012, Elliott submitted documentation that she was no longer

suffering from dizziness and she asked to return to work, but Ingalls took the

position that Elliott could not return to work because her restrictions had not

changed.  (*Id.*; Def.'s Mot., Ex. 23, ECF NO. 24-23).  On June 20, 2012, Elliott

submitted medical records in which her physician opined that she should be able to

return to work.  Ingalls claims that these records were unclear and did not modify

Elliott's restrictions.  (Def.'s Mot., Ex. 16, ECF No. 24-16).  Michelle Edwards,

Ingalls' Nursing Manager, has testified, "I spoke with her physician's office again to

seek clarity.  I tried to convey that we would need documentation showing changes

to Ms. Elliott's prior restrictions before she could be permitted to return to work.

The restrictions that were established in April 2012 were never modified."  (*Id.*)

Elliott also claims that she provided Ingalls with additional information on August

22, 2012, but she has not provided any details regarding this information.  (Pl.'s

Resp., Ex. A, ECF NO. 31-1).  The only documentation located in the record that is

dated August 22, 2012, is a Certificate to Return to School or Work that stated

-4-

Elliott had been under her physician's care from 2005 to the present and that she was able to return to work on August 27, 2012. (Def.'s Mot., Ex. 25, ECF No. 24-25).

On May 8, 2013, Elliott filed an Application for Disability Insurance Benefits with the Social Security Administration. (Def.'s Mot., Ex. 5, ECF No. 24-5). In support of her application, she stated that sometimes she is unable to clean her house, and she is required to take breaks frequently. (Def.'s Mot., Ex. 3, ECF No. 24-3). She reported that she is unable to take a shower due to dizziness, so she must sit in the bath tub. (*Id.*) Her arms quickly tire when she is combing and curling her hair. (*Id.*) When she was asked what she was able to do before her illness that she cannot do now, she replied, "Go to work on my job." (*Id.*) She also listed travel and yard work as activities that she can no longer perform. (*Id.*) She explained that she is unable to do yard work, because that requires bending, stooping, standing, and lifting. (*Id.*) She explained that her heart problems keep her from working, because she gets short of breath, and she cannot do much climbing, lifting, and bending. (Def.'s Mot., Ex. 4, ECF No. 24-4). Elliott's Application for Disability Insurance Benefits was granted, and she continues to receive benefits. (Def.'s Mot., Ex. 7, ECF No. 24-7; Def.'s Mot., Ex. 1 at 16, 107, ECF No. 24-1).

At her deposition, Elliott testified that the statements she made to the Social Security Administration regarding her inability to work were truthful. (*Id.*) Elliott

has now submitted an affidavit to the Court in which she testified:

> In my deposition I was questioned about whether I could work in my prior position.  In every situation where Defendant questioned me about whether I could work in my deposition it referenced my social security status in the same question or the question before it.  I answered that I could not work because I understood the Defendant to be asking me if I could work based on the definition of disabled under the social security administration, and not whether I could work with reasonable accommodations under the Americans with Disabilities Act.

(Pl.'s Resp., Ex. 1, ECF No. 31-1).

On December 10, 2012, Elliott submitted a Charge of Discrimination to the EEOC, alleging failure to accommodate her disability as well as retaliation.  (Def.'s Mot., Ex. 26, ECF No. 24-26).  The EEOC sent a right to sue notice to Elliott on August 20, 2013, and she filed this lawsuit on November 18, 2013, alleging ADA discrimination, ADA retaliation, and FMLA retaliation.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim.  Fed. R. Civ. P. 56.  The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25.  The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing

the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I.  ELLIOTT'S ADA DISCRIMINATION AND RETALIATION CLAIMS

"Title I of the ADA incorporates by reference Title VII's administrative prerequisites for filing suit in federal court."  *Gerald v. Univ. of S. Miss.*, No. 2:12cv147-KS-MTP, 2014 WL 172113 at *6 (S.D. Miss. Jan. 15, 2014) (citing 42 U.S.C. § 12177(a); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996)). Title VII requires claimants to file a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1). This requirement serves as a statute of limitations.  *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999).

The Charge of Discrimination that is at issue in this lawsuit was filed with the EEOC on December 10, 2012.  Therefore, ADA discrimination and retaliation claims arising out of employment decisions made by Ingalls prior to June 13, 2012, are barred by the statute of limitations.  Elliott does not dispute this determination; however, she claims that Ingalls discriminated against her when she submitted supplemental information in an attempt to obtain reinstatement on two occasions – June 20, 2012, and August 22, 2012.

The Fifth Circuit has not addressed the issue of whether requests for reconsideration constitute discrete discriminatory acts that reset the statute of limitations.  However, jurisdictions that have addressed this issue have determined that requests for reconsideration do not reset the statute of limitations.  For

-7-

example, the Third Circuit has held, "The repeated refusal of an employer to reinstate an employee to a formerly held position . . . does not give rise to a new claim of discrimination." *Zdzeich v. DaimlerChrysler Corp.*, No. 03-2953, 114 F. App'x 469, 471 (3d Cir. Sept. 30, 2004); *see also Taylor v. AutoAlliance Intern., Inc.*, No. 08-CV-11318, 2009 WL 2591533 at *4 (E.D. Mich. Aug. 24, 2009). "To permit a person to reset the statutory requirements for the timely filing of a complaint merely by writing a new letter to his former employer would clearly vitiate the intent behind the [180]-day time limit." *Zdzeich*, 114 F. App'x at 472.

The initial denial of Elliott's request for accommodation occurred in April 2012, more than 180 days before she filed her EEOC charge. There is no evidence before the Court that Elliott's restrictions changed after April 2012. In fact, Elliott's physician clearly stated that the restrictions imposed in April 2012 were "lifelong." As a result, the statute of limitations was not reset when Elliott sought reconsideration of Ingalls' initial refusal to accommodate her on June 20, 2012, and August 22, 2012. Elliott's ADA discrimination and retaliation claims are therefore barred by the statute of limitations.

## II. ELLIOTT'S FAMILY AND MEDICAL LEAVE ACT RETALIATION CLAIM

Elliott claims that Ingalls retaliated against her after she exercised her right to take leave pursuant to the Family and Medical Leave Act (FMLA) from January 2012 until April 2012. Ingalls refused to restore Elliott to her position or to a position with equivalent employment benefits.

The FMLA permits employees to take reasonable leave for medical reasons, and it prohibits employers from retaliating against employees who exercise their right to leave.  29 U.S.C. § 2601(b)(2); 29 U.S.C. § 2615(a)(2).  In order to establish a prima facie case of FMLA retaliation, a plaintiff must show that "(1) he was protected under the FMLA, (2) he suffered an adverse employment action, and (3) the adverse action was taken because he sought protection under the FMLA." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013) (citing *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006)).[1]

The parties do not dispute that the first two elements are satisfied.  Elliott's actions of taking FMLA leave and of seeking restoration of her prior position constitute protected activities under the FMLA, and it is undisputed that Elliott suffered an adverse employment action when she was not permitted to return to work.  *See* 29 U.S.C. § 2612(a)(1); 29 U.S.C. § 2614(a)(1).  However, Ingalls argues that Elliott has not established a prima facie case, because there is no evidence to satisfy the third element, which requires proof of causation.  Elliott counters that she can demonstrate causation because of the short time period between her protected activity and her termination.  *See Mauder*, 446 F.3d at 580.

----

[1] As for the third element, which concerns causation, the Fifth Circuit has noted that it is uncertain whether a plaintiff must prove that the employer would not have terminated the employee but for the plaintiff's engaging in FMLA-protected activity or whether it is sufficient for a plaintiff to prove that the plaintiff's engaging in FMLA-protected activity was a motivating factor in the employer's decision to terminate the employee.  *See Ion*, 731 F.3d at 389-90.  The parties in this case have not addressed this uncertainty or taken any position as to the proper causation standard.

Ingalls prohibited Elliott from returning to work approximately three months after her FMLA leave began and almost immediately after she engaged in the protected activity of seeking restoration to her former position. This Court finds that either of these short time periods creates an inference of causation sufficient to satisfy a prima facie case of FMLA retaliation. *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (permitting an inference of causation from a time lapse of up to four months); *Richard v. Cingular Wireless LLC*, No. 06-30396, 233 F. App'x 334, 338 (5th Cir. 2007) (allowing an inference of causation from a time span of approximately two and a half months).

Once a plaintiff has established a prima facie case of FMLA retaliation, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for the employee's termination. *Ion*, 731 F.3d at 390-91. Ingalls has produced sworn testimony that there were no positions available at the shipyard that an electrician with Elliott's restrictions could perform. (Def.'s Mot., Ex. 8, ECF No. 24-8; Def.'s Mot., Ex. 12, ECF No. 24-12; Def.'s Mot., Ex. 16, ECF No. 24-16). For example, Lawrence E. Chambliss, Ingalls' Electrical Superintendent, testified:

> Electricians need to be able to lift weights of 40 to 50 pounds. Elliott's 25-pound lifting restriction would prevent her from being able to perform necessary functions of her job. Also no electricians spend 100% of their time in air-conditioning. Elliott's restriction of no exposure to temperatures over 95 degrees could not be satisfied.

(Def.'s Mot., Ex. 8, ECF No. 24-8). As a result, this Court finds that Ingalls has met its burden of articulating a legitimate, nondiscriminatory reason for refusing to permit Elliott to return to work.

Since Ingalls has presented a legitimate, non-discriminatory reason to the Court, the burden shifts back to Elliott to show "by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332-33 (5th Cir. 2005). Elliott has provided the following sworn testimony in an attempt to meet this burden:

> I could have worked for Defendant on April 10[,] 2012, and afterward with reasonable accommodations. As part of the position of building hanger bars for Defendant all employees have large fans overhead so it does not get too hot for me to work. I was also allowed to have a personal box fan next to me to keep cool. The position also reasonably accommodated my medical restrictions as it was a sitting position that allowed me to stand to take a short break every 3-4 hours. I know that I could perform this position with those accommodations as I performed this exact position in 2003 or 2004 for Defendant with the same accommodations.

(Pl.'s Resp., Ex. A, ECF No. 31-1). Ingalls asks the Court to disregard this testimony, but the Court cannot do so while considering a motion for summary judgment. By the narrowest of margins, the Court must find that Elliott's testimony creates a genuine issue of material fact regarding whether Ingalls' proffered reason for refusing to allow her to return to work following FMLA leave is pretext for discrimination. After hearing evidence, a properly instructed jury will resolve any factual dispute. Ingalls' Motion for Summary Judgment is denied as to Elliott's FMLA retaliation claim.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [24] filed by the defendant, Huntington Ingalls, Inc., is **GRANTED** as to Elliott's ADA claims and **DENIED** as to Elliott's FMLA

retaliation claim.

**SO ORDERED AND ADJUDGED** this the 23rd day of September, 2014.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE